# United States Court of Appeals
## For the First Circuit

———————————

No. 99-2342

UNITED STATES OF AMERICA,

Appellee,

v.

ALAN LEE AMIRAULT,

Defendant, Appellant.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

———————————

Before

Selya and Lipez, Circuit Judges,

and Casellas,* District Judge.

———————————

Bjorn Lange, Assistant Federal Public Defender, for appellant.
Jean B. Weld, Assistant United States Attorney, with whom Paul M. Gagnon, United States Attorney, was on brief, for appellee.

———————————

August 18, 2000

———————————


_____

*Of the District of Puerto Rico, sitting by designation.

**SELYA, <u>Circuit Judge</u>.**  Defendant-appellant Alan Lee Amirault pled guilty to possessing three items containing visual depictions of minors engaged in sexually explicit conduct.  <u>See</u> 18 U.S.C. § 2252(a)(4)(B) (1994) (current version at 18 U.S.C. § 2252(a)(4)(B)) (Supp. IV 1998)).  After the district court sentenced him to serve sixty months in prison, we vacated the sentence.  <u>See</u> <u>United States</u> v. <u>Amirault</u>, 173 F.3d 28 (1st Cir. 1999).  At resentencing, the district court corrected its original error, departed upward under USSG §5K2.0, and imposed a forty-six month incarcerative term.[1]  Amirault appeals anew, this time contesting the upward departure.  We affirm.

**I**

We review departure decisions for abuse of discretion. <u>See</u> <u>United States</u> v. <u>Brewster</u>, 127 F.3d 22, 25 (1st Cir. 1997). When a departure occurs under the aegis of section 5K2.0, we mount a tripartite inquiry.  "First, we determine as a theoretical matter whether the stated ground for departure is permissible under the guidelines.  If the ground is theoretically appropriate, we next examine whether it finds adequate factual support in the record.  If so, we must probe

---

[1]The court appropriately employed the 1998 edition of the United States Sentencing Guidelines.  <u>See</u> <u>United States</u> v. <u>Harotunian</u>, 920 F.2d 1040, 1041-42 (1st Cir. 1990).  All references herein are to that version.

the degree of the departure in order to verify its reasonableness." United States v. Dethlefs, 123 F.3d 39, 43-44 (1st Cir. 1997) (footnote and internal citations omitted).

In the case at hand, the lower court premised its upward departure on a finding that the appellant had sexually assaulted two of his sisters-in-law during their minority. The appellant contests each of the elements of the Dethlefs inquiry. We consider those three arguments seriatim. We then confront the tag end of the appellant's asseverational array.

## II

We deal expeditiously with the appellant's thesis that, even if the sexual assaults occurred, they cannot support an upward departure. This thesis rests on the premise that the assaults happened many years before the offense of conviction and, thus, were not "relevant conduct" under USSG §1B1.3. This argument is a red herring.

In this case, the district court did not rest its decision on a determination that the sexual assaults were relevant conduct, but, rather, concluded that the acts warranted an upward departure under section 5K2.0. In doing so, the court drew an analogy to USSG §2G2.2, the guideline that deals with trafficking in material involving the sexual exploitation of a minor. One of the specific offense characteristics of the

-4-

trafficking guideline mandates a five-level increase in the base offense level "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." USSG §2G2.2(b)(4). The pattern of sexual abuse or exploitation need not occur during the commission of the offense of conviction in order to constitute this specific offense characteristic. See id., comment. (n.1) (explaining that the term "'[p]attern of activity involving the sexual abuse or exploitation of a minor,'" as used in section 2G2.2(b)(4), "means any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense, (B) involved the same or different victims, or (C) resulted in a conviction for such conduct").

This approach was sound. A sentencing court is free to make suitable comparisons and draw plausible analogies in considering whether to depart from the guideline sentencing range. So it was here: although the guideline applicable to the offense of conviction was section 2G2.4 (the possession guideline), not section 2G2.2 (the trafficking guideline), see Amirault, 173 F.3d at 35, the district court was entitled to examine factors set out in section 2G2.2(b) in order to evaluate the appropriateness of a departure. Simply because a specific

offense characteristic is listed explicitly in one guideline but not another does not mean that the factor may not be relevant to the departure calculus in respect to an offense under the latter guideline. See USSG §5K2.0, p.s. Finding, as we do, that the lower court permissibly drew this analogy to USSG §2G2.2(b)(4) confirms the suitability of the court's use of the sexual assaults (if proven) as the cornerstone of the envisioned departure.

The appellant's theory — that the district court somehow was obliged to forgo the analogy and shape any such departure around the contours of the relevant conduct guideline — is jejune. The relevant conduct guideline is not directed specifically at section 5K2.0 departures. Rather, its purpose is to determine adjustments to the base offense level, taking into account a defendant's overall behavior. See United States v. Sanders, 982 F.2d 4, 10 (1st Cir. 1992). Adjustments and departures are different species, dissimilar both in purpose and kind. See, e.g., United States v. Ortiz-Santiago, 211 F.3d 146, 151 (1st Cir. 2000). Not surprisingly, therefore, upward departures are allowed for acts of misconduct not resulting in conviction, as long as those acts, whether or not relevant conduct in the section 1B1.3 sense, relate meaningfully to the

offense of conviction.  See United States v. Kim, 896 F.2d 678, 684 (2d Cir. 1990).

This is such a case.  The sexual assaults that the sentencing court found the appellant had committed were part of a pattern of sexual exploitation of the minor sisters-in-law that included, inter alia, the taking of approximately forty nude photographs and their retention in his child pornography collection (for his sexual gratification).  These snapshots not only memorialized the assaults but also meaningfully related them to the possession offense.  Even if, as the appellant contends, the snapshots were not "sexually explicit" under 18 U.S.C. § 2256(2) (1994), they nonetheless demonstrated rather convincingly his prurient interest in sexualized images of children.  In fact, he admitted to the police and to the court below that he kept these particular pictures secret and masturbated with them.  Because the retained photographs link the appellant's conduct during the offense of conviction to the earlier assaults, the assaults constituted an allowable ground on which to premise an upward departure.

Battling on, the appellant insists that there exists a temporal limit — in his words, a "temporal wall" — that precludes the use of past conduct for sentence-enhancement purposes, and that these two-decade-old incidents are too

distant in time. To further this argument, he notes that the sentencing guidelines themselves contain time limits on the use of past convictions, see USSG §4A1.2(e), and cites cases that question the propriety, in particular circumstances, of basing sentence enhancements on unrelated, remote convictions, see, e.g., United States v. Aymelek, 926 F.2d 64, 73 (1st Cir. 1991). Yet, as the sentencing guidelines and the cases recognize, the appropriateness of a temporal limit depends heavily on the circumstances of the particular case. For example, even though the sentencing guidelines generally restrict the use of dated convictions, they do allow the sentencing court leeway to consider such convictions if they provide "evidence of similar, or serious dissimilar, criminal conduct." USSG §4A1.2, comment. (n.8).

For the crime of trafficking in child pornography, the Sentencing Commission has specifically addressed the propriety of basing an upward departure on a dated pattern or incident of sexual abuse or exploitation. The most pertinent guideline commentary teaches, with an exception that has no bearing here, that "[i]f the defendant engaged in the sexual abuse or exploitation of a minor at any time (whether or not such abuse or exploitation occurred during the course of the offense or resulted in a conviction for such conduct) . . . an upward

-8-

departure may be warranted." Id. §2G2.2, comment. (n.2) (emphasis supplied). Having accepted the district court's analogy to section 2G2.2, we see no reason to disregard this commentary. It follows inexorably that there was no legal error in the lower court's determination that the sexual assaults, although occurring long ago, nevertheless could bear the weight of an upward departure under section 5K2.0.

## III

The appellant couples his challenge to the appropriateness of the departure-justifying circumstance with a challenge to the very existence of that circumstance. In this vein, he maintains that the district court clearly erred in finding that he had sexually assaulted his two sisters-in-law. The appellant bases this remonstrance primarily on the two-decade delay in the victims' revelations and the timing of those revelations (they surfaced shortly after the commencement of his divorce proceedings). He marries this attack to an attack on the reliability of his supposed admissions to the police, noting that the reported statements were neither recorded nor submitted to him for signature and, in all events, were made in the immediate aftermath of the turmoil engendered by his arrest.

Viewed in the abstract, these counter-arguments present a plausible (although not inevitable) scenario different from

that discerned by the district court.  But plausibility is not enough to carry the day.  We review a sentencing court's factfinding deferentially, mindful of that court's superior coign of vantage.  See Koon v. United States, 518 U.S. 81, 98 (1996); United States v. Diaz-Villafane, 874 F.2d 43, 49 (1st Cir. 1989).  Give or take a few ruffles and flourishes, the appellant hawks the same set of arguments here that he proffered below.  The sentencing court rejected those arguments, choosing instead to credit the detailed accounts contained in the victim impact statements and to take the appellant's initial admissions of inappropriate contact at face value.  The court found added support for the occurrence of the sexual assaults in the appellant's taking and retention of the nude photographs of his sisters-in-law and credited the suggestion that the victims failed to speak out earlier due to fear, shame, and mortification.

There is no principled way that we can second-guess these findings.  Because the record adequately supports the court's version of the controverted events, its rejection of the appellant's subsequent disavowals cannot be clearly erroneous. See United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990) (stating that a sentencing court's determination cannot be clearly erroneous "where there is more than one plausible view

of the circumstances" and the court chooses among them).  This is especially so because the appellant's position hinges on questions of credibility, and such questions are uniquely within the competence of the sentencing court.  See United States v. Sandoval, 204 F.3d 283, 287 (1st Cir. 2000); United States v. Conley, 156 F.3d 78, 85 (1st Cir. 1998).

**IV**

The appellant further contends that, even if the district court had an appropriate, factually acceptable basis for departing upward, the extent of the departure was excessive. Because a sentencing court possesses considerable latitude in fixing the degree of an unguided departure, contentions of this sort usually face tough sledding in an appellate venue.  This case is no exception.

The court of appeals will interfere in the sentencing court's determination of the extent of an unguided departure only upon a showing that the court has committed a manifest abuse of discretion.  See Brewster, 127 F.3d at 31.  In this instance, the magnitude of the departure, standing alone, is unremarkable.  Although the district court departed upward by nineteen months to a point approximately seventy percent above the maximum permitted under the applicable guideline sentencing

range,[2] we have upheld more onerous upward departures where the circumstances warranted.  See, e.g., United States v. Rostoff, 53 F.3d 398, 411 (1st Cir. 1995) (collecting cases).  Here, moreover, the court sufficiently explained the extent of the departure by drawing an analogy to USSG §2G2.2(b)(4), which provides for a five-level increase in the applicable offense level if there is a pattern of activity involving the sexual abuse of a minor.  The court fortified this explanation by a further analogy to USSG §2A3.1 (covering criminal sexual abuse), which if directly applicable (i) would have dictated an offense level of twenty-seven — six levels higher than that calculated for the appellant, even after taking the upward departure into account — and (ii) would have yielded a sentencing range of seventy to eighty-seven months.  See USSG Ch.5, Pt.A (sentencing table).  The appellant's riposte — that he was sentenced as if he had sexually penetrated his sisters-in-law, notwithstanding the absence of any evidence of penetration — is a blustery effort to distract attention from what really happened.  In all events, the charge comprises rank conjecture, wholly unsupported by the record.

---

[2]The appellant's pre-departure sentencing range topped out at twenty-seven months (offense level sixteen; criminal history category I).  The lower court departed upward by five levels and imposed a forty-six month incarcerative sentence.

## V

The appellant has one more sheaf of arrows in his quiver. He posits that the upward departure, even if otherwise unimpugnable, violated his rights under the Ex Post Facto Clause and the Due Process Clause. The government brands these claims as waived.

We need not tarry over the waiver question. The appellant raised this matched set of constitutional claims at the original disposition hearing, but to no avail. He then advanced them in his first appeal, but we found it unnecessary to go down that road. See Amirault, 173 F.3d at 35. Although the appellant did not reassert the claims at resentencing, he did not explicitly renounce them. We decline to find waiver in these circumstances. Cf. United States v. Ticchiarelli, 171 F.3d 24, 33 (1st Cir. 1999) ("Our waiver doctrine does not require that a defendant, in order to preserve his rights on appeal, raise every objection that might have been relevant if the district court had not already rejected the defendant's arguments.").

From the appellant's standpoint, however, this is a Pyrrhic victory. The law (or a judicial decree) violates the Ex Post Facto Clause if it "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when

committed." Calder v. Bull, 3 U.S. (3 Dall.) 386, 390 (1798). The appellant asserts that the upward departure worked such a violation because it increased his sentence based on conduct that happened twenty years earlier (before the inception of the federal sentencing guidelines and before the date on which possession of child pornography became a federal offense).

This construct is ingenious, but incorrect. The Supreme Court recently declared "consideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted." Witte v. United States, 515 U.S. 389, 401 (1995). Thus, to the extent that the sentence imposed on the appellant inflicted a harsher punishment, it did so not with respect to the earlier sexual assaults but, rather, with respect to his current crime: the possession of child pornography. It follows inexorably that no ex post facto problem exists. See Gryger v. Burke, 334 U.S. 728, 732 (1948) (reasoning to this effect in holding that an habitual offender statute does not violate the Ex Post Facto Clause); United States v. Regan, 989 F.2d 44, 48 (1st Cir. 1993) (noting that "[t]he guidelines' criminal history provisions are routinely applied to increase sentences based upon convictions that

-14-

occurred before the guidelines were adopted"); see also United States v. Forbes, 16 F.3d 1294, 1302 (1st Cir. 1994).

In a related vein, the appellant contends that the upward departure unconstitutionally deprived him of a statute-of-limitations defense and effectively increased his punishment by the use of temporally remote conduct for which he could no longer have been prosecuted. This argument is shopworn.

It is by now firmly settled that a sentencing court may consider as relevant conduct acts which could not be independently prosecuted because of the passage of time. See United States v. Valenti, 121 F.3d 327, 334 (7th Cir. 1997) (collecting cases); see also United States v. Dolloph, 75 F.3d 35, 40 (1st Cir. 1996) (explaining that a sentencing court may consider, as relevant conduct, acts that are not within the court's jurisdiction to try). We hold that the same principle obtains in the realm of departures: a sentencing court may consider as a ground for departure under USSG §5K2.0 conduct that could not be independently prosecuted because of the passage of time.

Finally, the appellant maintains that if the sentencing guidelines allow consideration of the sexual assaults, their application violates due process. The appellant is wrong.

From the standpoint of due process, a district court properly may consider uncharged conduct at sentencing (as long as that conduct either is admitted or reliably proved by a preponderance of the evidence). See Witte, 515 U.S. at 401. Even acquitted conduct may be so considered. See United States v. Watts, 519 U.S. 148, 157 (1997) (per curiam); United States v. Rodriguez, 112 F.3d 26, 31 (1st Cir. 1997); United States v. Mocciola, 891 F.2d 13, 17 (1st Cir. 1989). Despite the protracted length of time that passed between the sexual assaults and the appellant's commission of the child pornography offense, the Due Process Clause furnishes no basis for prohibiting a sentencing court from assessing the impact of the earlier conduct en route to determining the appropriateness vel non of an upward departure.[3]

**VI**

---

[3]Although the appellant phrases this argument in terms of the sentencing guidelines, we note that the adoption of the guidelines did not materially alter a sentencing court's historic discretion to consider "'the fullest information possible concerning the defendant's life and characteristics.'" Watts, 519 U.S. at 152 (quoting Williams v. New York, 337 U.S. 241, 247 (1949)); see also 18 U.S.C. § 3661 (1994) ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

We need go no further.  Because the appellant was lawfully sentenced the second time around, the judgment below will be

**<u>Affirmed</u>.**